Judge Simpson
delivered the opinion of the Court.
William Powers was the purchaser of two lots in the town of Elkton, in Todd county, for the title to which he held the separate bonds of the two individuals from whom he had purchased the property. These bonds he placed in the hands of Russell, the plaintiff in error, for the purpose of securing to him the payment of the price of some improvements, which, by contract between the parties, he was to make upon the lots.
At a subsequent period, Russell became the security of Powers in a replevin bond, in favor of F. M. Bristow, and also agreed to be responsible for a debt due to A. Thompson, upon the express understanding and agreement, however, between him and Powers, that he was to retain the bonds for the two lots, to indemnify him *185 ds surety in the replevin bond to Bristow, and also to secure the payment of the debt to Thompson.
After these arrangements had been made, Powers mortgaged the two lots to Roberts and Newton, to secure the payment of a debt which he owed to them. This debt having been assigned to Hazel Petree by the mortgagees, he brought a suit to foreclose the mortgage, and Russell having been made a defendant,' he asserted a lien on the twolotsfor the balance due him onaccountof theimprovementshe had made upon the lots,and for the amount of the debt to Bristow, whifeh he alleged he had paid for Powers as his surety, and also for the debt due to Thompson. Russell had, after the commencement of the suit, but before he filed'his answer, which he made a cross-bill, obtained from Powers a written assignment of the two bonds, which he exhibited and relied upon.
Did the verbal agreement between Powers and Russell, and the deposit'of the title bonds for the lots, and the subsequent assignment of them to Russell, vest in him any available claim or right to the property? This is the principle question in the case.
We do not deem it necessary to determine, át preSént, Whether the deposit of the title bond's, under a mere verbal arrangement would, of itself, have vested Russell with any enforcible equity. A title bond for land is assignable under our statute. The assignment vests in the assignee the legal title to the bond. The mortgage by Powers did not operate as a transfer of thé title to the bonds, but only conveyed to the mortgagees an equitable title to the lots. The legal title to the bonds still continued in Powers, notwithstanding the verbal sale of them to Russell, as a security, and the execution of the mortgage upon the lots. A suit, at law, upon the bonds, could only have been maintained in the ñamé of Powers. When, therefore, he assigned the bonds to Rússéll, the legal title to them passed to the assignee. The assignee has the exclusive right to sue, at law, upon the bonds, and also an enforcible equity to the land, unless the equity of the mortgagees is superior to his.
As between equities priority gives preference. A prior equity with a legal advantage will not be disturbed, in favor of a junior equity, though the legal right was acquired in aid of the prior equity after a knowledge of the junior equity of the adverse party.
Information which should put a party upon inquiry is sufficient notice.
Russell acquired, by the possession of the bonds and the verbal contract with Powers, an equity, which, whether enforcible or not, prior to the assignment, he can rely upon, after the assignment, for protection against the mere equity of the mortgagees. His equity is prior, in time, to that of the mortgagees, and having by the acquisition of the title to the bonds, obtained a legal advantage, a Court of Equity will not deprive him of it, in favor of an equity which originated subsequent to, and is not more meritorious than his. The fact that he had knowledge of the equity of the mortgagees, at the time of the assignment, cannot prejudice his prior equity. If the only right which he has, had been acquired by the assignment, as he received that with notice of the equity of the mortgagees, he would be compelled to surrender it to their claim. But having, in reference to time, the superior equity, and also the legal title to the bonds, his attitude protects him to the extent of his claim, unless his equity was unknown to the mortgagees when the mortgage was executed, in which event, as the Jaw requires a mortgage on equitable titles to be .recorded, which was done in this case, it may be a serious question, whether his equity, being secret must not yield to the recorded equitable right of the mortgagees.
It is admitted, by the answer, the mortgagees had notice, at the time the mortgage was executed, that the bonds for the lots were in the possession of Russell, having been previously deposited in his hands by the mortgagor, as a security for certain purposes.- It is alleged, however, that the mortgagor informed them at the same time, that although Russell held the bonds in his possession, he had no further lien upon them or the property, his claim having been previously discharged in full. The information they had, apprizing them of the fact that the bonds for the lots were in the possession of Russell, was sufficient to put them upon an enquiry into the nature and extent of his claim. If they relied upon the statements of the mortgagor, they done so at their peril It was their duty to have ascertained *187 from Russell, himself, whether he had any claim upon the property. If they failed to do it, the law deems it their own fault, and considers them constructively notified of his equitable rights to their full extent. The mortgage was executed to secure a pre-existing debt, and it may be presumed that the mortgagees were willing to accept it, as it seems to have embraced all the property belonging to the mortgagor, without instituting any enquiry into the nature and extent of Russell’s claim upon the lots, determining to risk the validity of that claim, knowing that their condition could not be bettered by any additional knowledge they might acquii’e on the subject.
If the testimony of Powers, it having been assailed, be entirely excluded from consideration in determining the extent of Russell’s lien, still, the other evidence is entirely sufficient to sustain it, not only for the sum decreed to him by the Court below for the balance due to him on account of the improvements which he made upon the lots, but also for the debt, which, as the surety of Powers, he paid to Bristow. Nor can we perceive any satisfactory reason why the lien should not embrace the debt to Thompson. The arrangement, in relation to the debt, does not depend upon the testimony of Powers alone, but is fully established by the testimony of Anderson. Thompson accepted Power’s note, payable directly to himself, in discharge of a debt he held on Anderson. He was induced to do it, by the promise made by Powers at the time, that Russell should retain the bonds for the lots until the debt was paid, and the promise of Russell consequent thereon, that the debt should be paid. The transaction creates a clear equity in favor of Thompson, who agreed to, and did change his debtor, upon the faith of having a lien upon the lots in the hands of Russell for the payment of the debt.
We are, therefore, of opinion a decree should have been rendered securing to Russell a priority of lien upon the lots, not only for the balance due him for the *188 improvements, and the debt be paid to Bristow, bat also for the balance due upon the debt to Thompson.
J. Sf W.L. Harlan for plaintiff; Bristow and Petree fo.r defendants..
Wherefore, the decree is reversed and cause remanded, that a decree may be rendered in conformity with this opinion.