## In re WAGNER.

(District Court, E. D. Kentucky. September 20, 1901.)

1. MECHANICS' LIENS—PRIORITY AS BETWEEN LIENHOLDER AND MORTGAGEE—KENTUCKY STATUTE.

The mechanic's lien law of Kentucky, as amended in 1896, provides (Ky. St. [2d Ed.] § 2463) that mechanics and material men shall have a lien upon the land and improvements, which "shall be superior to any mortgage or incumbrance created subsequent to the beginning of the labor or the furnishing of the materials; and said lien, if asserted as hereinafter provided, shall relate back and take effect from the time of the commencement of the labor or the furnishing of the materials," provided that such lien shall not take precedence of a mortgage or other contract lien or a bona fide conveyance "for value without notice," unless prior to the recording of such mortgage or other lien the me-

chanic or material man shall have filed his claim for lien, or a prelim-
inary statement showing that he has performed labor or furnished
material, or expects to do so. *Held*, that since the statute does not pre-
scribe what shall constitute notice to affect a mortgagee who takes his
mortgage after a mechanic or material man has commenced to perform
labor or furnish materials, or whether such notice must be actual, or
only constructive, such question must be determined under the general
doctrine and rules of equity, and that under such rules the knowledge
of an agent who acted for a mortgagee in taking a mortgage that
buildings were being erected on the property was notice to the mort-
gagee of the rights of a material man who was at the time furnishing
lumber for such buildings, and the lien of the latter, duly perfected
under the statute, was entitled to precedence over the mortgage.

**2. SAME—KNOWLEDGE OF IMPROVEMENT AS NOTICE OF LIEN.**

Where an agent for a mortgagee in taking a mortgage had knowledge
that improvements were being made upon the property, out of which
mechanics' liens might arise, and required the mortgagor to secure
releases from the mechanics and material men, he is not justified in
accepting a statement of the mortgagor that the releases obtained cover
all claims; and the fact of such statement will not relieve the mort-
gagee from the effect of such knowledge of his agent as notice to him
of claims which were not in fact released, and the existence of which
the agent could have ascertained by reasonable inquiry.

In Bankruptcy. On review of decision of referee giving priority
to a mechanic's lien on property of the bankrupt over a mortgage.

Myers & Howard, for Myers.
H. C. Theisson, for Humpert.

COCHRAN, District Judge. In this case there has arisen a ques-
tion as to priority of liens on certain real estate of the bankrupt,
Wagner, in Covington, Ky., between Joseph Humpert and P. N.
Myers. Humpert's lien exists by virtue of the mechanic's lien law of
this state; Myers', under a mortgage given by Wagner. The ref-
eree decided in favor of Humpert, and on petition of Myers has cer-
tified his finding to the court for review.

Humpert furnished lumber to Wagner, which was used in the erec-
tion of certain improvements, to wit, a brick cottage, a frame house,
and an addition to a brick house on said real estate. He began June
18th, and quit October 9, 1900. In November, 1900, within the time
allowed by law, to preserve his lien, he filed an original and amend-
ed statement in the clerk's office of the Kenton county court, which
were in due form, claiming a lien on the property for the sum of
$377.87, the balance then due him. On July 12, 1900, shortly after
Humpert began furnishing lumber, Myers loaned Wagner $1,000 up-
on a mortgage on said real estate, which was lodged for record and
recorded in said office on that date. At that time, as before stated,
Humpert had not filed any statement setting forth his lien. The
question of priority between these two liens depends upon section 1,
art. 1, c. 151, Acts 1891–93, entitled "An act concerning liens," ap-
proved February 25, 1893, as amended by section 1, c. 29, Acts 1896,
approved March 21, 1896, which is the same as section 2463, Ky. St.
(2d Ed.), under which Humpert's lien has arisen, and which is as
follows:

"A person who performs labor or furnishes materials in the erection, alter-
ing or repairing a house, building or other structure, or for any fixture or

machinery therein, or for the excavation of cellars, cisterns, vaults, wells, or for the improvement in any manner, of real estate, by contract with, or by the written consent of, the owner, contractor, sub-contractor, architect or authorized agent, shall have a lien thereon, and upon the land upon which said improvements shall have been made or on any interest such owner has in the same, to secure the amount thereof with costs; and said lien on the land or improvements shall be superior to any mortgage or incumbrance created subsequent to the beginning of the labor or the furnishing of the materials ; and said lien, if asserted as hereinafter provided, shall relate back and take effect from the time of the commencement of the labor or the furnishing of the materials. Provided, that such lien shall not take precedence of a mortgage or other contract, lien or bona fide conveyance for value without notice, duly recorded or lodged for record according to law, unless the person claiming such prior lien shall, before the recording of such mortgage or other contract, lien or conveyance, have filed in the clerk's office of the county court of the county wherein he shall have performed labor or furnished material, or shall expect to perform labor or furnish materials, as aforesaid, a statement showing that he has performed or furnished, or that he expects to perform or furnish, such labor or materials, and the amount in full thereof, and his lien shall not, as against the holder of said mortgage or other contract, lien or conveyance, exceed the amount of the lien claimed, or expect to be claimed, as set forth in such statement. The statement aforesaid shall, in other respects, be in the form of the tenor prescribed by section six of the act to which this is an amendment. The liens provided for herein shall in no case be for a greater amount in the aggregate than the contract price of the original contractor; and should the aggregate amount of liens exceed the price agreed upon between the original contractor and the owner, then there shall be a pro rata distribution of the original contract price among said lien-holders."

This statute expressly provides that the mechanic's or material man's lien created by it shall date from the beginning of the labor or the furnishing of the materials, and that it shall be superior to, or take precedence of, any mortgage or conveyance made subsequent to that time, except one for value without notice, and that it shall be superior to, or take precedence of, such mortgage or conveyance if the required statement is previously filed. As this was not done in this case, it follows that if Myers took his mortgage, which was for value, without notice of Humpert's lien, it should have priority, otherwise not. And the burden was on Myers to establish that he so took it. Myers did not testify in the case at all. The only testimony in it is that of his attorney who made the loan for him. He testified that before making the loan he examined the records of the Kenton county court for liens on the property, and found none; also that he stated to Wagner that he must obtain a release of their liens from all persons engaged either in laboring or furnishing materials in the erection of said improvements, and that, in pursuance of this requirement, Wagner gave him such a release signed by seven persons, who designated themselves therein, respectively, as brickmaker, plasterer, contracting carpenter, stone mason, furnisher of stone, bricklayer, and painter, and represented to him that these were all the persons so engaged. This testimony presupposes that Myers' attorney knew when he made the loan that the property was being improved, and that by mechanics and material men, and the release states the character of the improvements that were being made. He did not expressly deny that when he made the loan for Myers he had notice of Humpert's lien, or that he was furnishing lumber for

the improvements, nor did he so state that he believed that the persons signing the release were all the lienholders. Such denial and statement are to be inferred only from his testimony, as above recited. The release is dated July 31, 1900, and there is no explanation as to how this came to be so, on the basis, as testified to by Myers' attorney, that it was delivered, and the representation as to the parties signing was made, before the making of the loan and mortgage on July 12, 1900.

Assuming, however, that Myers himself did not have any direct information as to Humpert's lien, and that his attorney did not either, but, on the contrary, believed that the parties signing the release were all the lienholders, was Myers a mortgagee without notice, within the meaning of the statute? The answer to this question is contingent upon the effect to be given to the two facts, to wit, that Myers, through his attorney, if not directly, knew when the loan was made that the property was being improved, and the character of the improvements, and that Wagner represented to Myers' attorney at that time that the parties signing the release were all the persons engaged in furnishing either labor or material for said improvements. In determining the effect of these two facts we are not without aid from the decisions of the court of appeals of this state, if, indeed, they have not settled the matter. The early mechanic's lien laws of Kentucky were local in their character; that is, limited to certain cities and counties. As a rule, they did not require that a statement should be filed in the clerk's office of the county court to preserve the lien, and did not expressly provide that, if asserted in the manner and time required, the lien should date from the beginning of the furnishing of the labor or materials. But it was held by the court of appeals, in construing these statutes, that it did so date, and that it took precedence of any mortgage or conveyance of the property thereafter made, whether with or without notice of it. Institution v. Lowe, 1 B. Mon. 257; Trustees v. Young, 2 Duv. 582. Judge Robertson, in the latter case, said:

"Any other construction of the beneficent statute enacted for the encouragement and security of building mechanics might frustrate its object and make it a mockery. They undertook to work, as in this case, on the faith of the plighted lien for the entire job; and shall they have either to quit work, or go on without the security of a lien for what they might do after the interposition of a stranger's intermediate purchase or incumbrance? This, in our judgment, is not so, and ought not to be so."

The mechanic's lien laws of a great many of the states are similar to these early laws of Kentucky, as thus construed, in this respect. 15 Am. & Eng. Enc. Law, p. 86. They are, no doubt, relieved of any serious hardship to a subsequent mortgagee or purchaser by the consideration that by reasonable inquiry he can ascertain whether the property is being improved, and, if so, the extent of any liens on it due to this fact. The theory upon which they proceed is thus stated by Sanborn, circuit judge, in the case of Wisconsin Trust Co. v. Robinson & Cary Co., 15 C. C. A. 668, 68 Fed. 778:

"The theory and reason of the statute are that during the construction of the new building or improvement, and for 90 days thereafter, the new building or improvement itself shall be notice to all purchasers and incum-

brancers of the lien upon it, and that all who take any title to or mortgages upon the land on which it stands during this time shall take the title cum onere, and with constructive notice of every mechanic's lien that has attached to it. It is for this reason that the statute does not require the filing of any account to preserve the lien against them, and declares that the omission to file it shall not defeat the lien, except against purchasers and incumbrancers in good faith whose rights accrue after the 90 days have expired."

The mechanic's lien law of 1858 (Myers' Supp.) was quite similar to these earlier laws. It contained, however, this distinguishing provision, to wit:

"Sec. 12. The lien herein provided shall not be effectual or valid against a bona fide purchaser for a valuable consideration, without notice, actual or constructive, of such lien; but if the purchaser receives notice of the lien before the payment of the whole purchase money, the lien shall operate on the purchase money remaining unpaid. The pendency of a suit to enforce the lien, or a written statement of the lien, its amount, and the property liable to it, filed in the clerk's office of the county court of the county in which the land is situated, shall each be deemed constructive notice of the lien to subsequent purchasers; upon such a statement of the lien being filed in the clerk's office of the county court, the clerk shall endorse therein the time of filing same, and shall forthwith cross-index the same in the names of the owners of the property, subject to the lien, and of the claimant of the lien, in the index to the book in which mortgages are recorded, for which, and for receiving, filing away and preserving the statement, he shall receive fee of twenty-five cents."

In the case of Gore v. Cushing, 5 Bush, 304, the word "purchaser," in this section, was construed to include "mortgagee." And in the case of Foushee v. Grigsby, 12 Bush, 75, it was held that a firm, one of whom was the brother-in-law of one of the members of another firm owning and improving a hotel in Lexington, and both of whom lived in that city, and knew that the property was being improved, which became the surety of the latter firm for money borrowed, and received a mortgage on said property to secure it, was a bona fide mortgagee for value, without notice, actual or constructive, of the liens of the mechanics and material men growing out of the improvements. The reasoning upon which this conclusion was reached is thus stated by Judge Pryor in the opinion delivered by him on behalf of the court:

"The fact that some of the appellants were at work on the property, and material being furnished by others, at the time the mortgage was executed, was not an actual notice of the existence of the lien. It was notice that the property was being repaired, but gave no evidence to the purchaser of the nature of the contract between the employer and the employés, or that the money for the labor and materials furnished was unpaid. It is the lien that the purchaser must have notice of, and not the fact that the property is being improved. If the fact that work was being performed on the building was sufficient to put the purchaser on inquiry, it could only be deemed constructive notice, and would not affect the rights of the purchaser. The statute creating the lien in favor of the mechanic has defined the character of the constructive notice necessary to defeat the claim of the purchaser, and give to the mechanic a prior lien: 'The lien shall not be effectual or valid against a bona fide purchaser for a valuable consideration without notice, actual or constructive. The pendency of a suit to enforce the lien, or the filing of the account or statement in the clerk's office of the county court, as required by the 6th section of this chapter, shall be deemed constructive notice;' showing clearly that the legislature never contem-

plated that the purchaser should make inquiry of the laborer on the building to know whether he was paid by the day, or by the contractor or the employer, or whether he was himself the contractor, and the employer was in arrears to him. Constructive notice, as fixed by the statute, consists in filing the claim in the county clerk's office or in bringing the action to enforce the lien; and, as neither mode can be adopted until the work is completed, the purchaser must have actual notice of the lien, so as to affect his rights. If the law is defective, the legislature alone has the power to amend it; and to charge the purchaser by reason of a constructive notice other than that designated by the act creating the lien would be in disregard of the plain letter of the statute."

On the basis that knowledge by persons closely connected with the owner of property that it is being improved by mechanics and material men is, at best, constructive notice, the reasoning of the court is correct. But it is questionable, to say the least, whether such knowledge does not constitute what Mr. Pomeroy calls "actual notice inferred from circumstantial evidence." 2 Pom. Eq. Jur. § 600. This mechanic's lien law of 1858 was substantially embodied in the General Statutes of Kentucky, adopted April 22, 1873. Section 14 of chapter 70 thereof is the same as section 12 of the law of 1858. In the latter law there was imported a provision requiring the filing of statement in the office of the clerk of the county court within a certain time, for the purpose of preserving the lien, as well as to give constructive notice of its existence, and such has been a feature of the mechanic's lien law of Kentucky ever since. No change was made in that law, as contained in the General Statutes, until the "Act concerning liens," approved February 25, 1893 (Acts 1891–93, c. 151, p. 505). Section 1 thereof, which is the same as section 2463, Ky. St. (1st Ed.), is as follows:

"A person who performs labor or furnishes material in the erection, altering, or repairing a house, building, or other structure, or for any fixture or machinery therein, or for the excavation of cellars, cisterns, vaults, wells, or for the improvement, in any manner, of real estate by contract with, or by the written consent of, the owner, shall have a lien thereon, and upon the land upon which said improvements shall have been made, or on any interest such owner has in the same, to secure the amount thereof with costs; and said lien on the land or improvements shall be superior to any mortgage or incumbrance created subsequent to the beginning of the labor or the furnishing of the materials; and said lien, if asserted as hereinafter provided, shall relate back and take effect from the time of the commencement of the labor or the furnishing of the materials."

If this were the sole provision of this act, there would be room to claim that it was a reversion to the local laws as they existed prior to the law of 1858, and as they were construed in the cases referred to in respect to giving precedence to the lien created by it to any mortgage or conveyance subsequent to the beginning of the improvement. But section 15 thereof, the same as section 2477, Ky. St. (1st Ed.), is as follows:

"The liens declared in this article shall, if the lienholder complies with the requirements of sections six, seven, and eight hereof, and does so within the time therein fixed, be valid and effectual against any creditor of, or bona fide or other purchaser from, the owner of said property."

In view of this section, it would seem that a lien arising under this statute would not be superior to a mortgage for value, without

notice, created subsequent to the beginning of the lien; and in the case of Association v. Volmering (Ky.) 47 S. W. 1084, which arose under that statute, it was assumed that such was the case. For the court there held that the mechanic's lien was superior to the mortgage, not because it was prior in time, simply, but because, in addition to this, the mortgagee had notice of the lien when he took the mortgage. And it was held that knowledge on the part of the mortgagee that the property was being improved constituted notice of the mechanic's lien. Guffy, J., said:

"The main question presented for decision is whether or not the appellees acquired mechanics' liens upon the property in question superior to that of appellant's mortgage lien. It seems evident that at the time of the execution of the mortgage appellant had actual notice of the contract for improvements, and that the work had progressed to a considerable extent at the time of the execution of the mortgage. It therefore follows that the lien of the original contractor, as well as the liens accruing to the subcontractors, mechanics, and material men, takes precedence of the mortgage lien of appellant."

This act of February 25, 1893, was amended by the act of March 21, 1896. Among other amendments, there was substituted for section 1 thereof the provision quoted at the beginning of this opinion, which is the same as section 2463, Ky. St. (2d Ed.), and which controls this case.

It is claimed by counsel for Myers that the case of Foushee v. Grigsby, supra, is decisive of the construction to be put on this provision, and that the case of Association v. Volmering has no bearing thereon. The ground of the latter contention is that it arose under the act of February 25, 1893, before it was amended by the act of March 21, 1896, and that, according to it, a mechanic's lien, which was prior in time to a mortgage, took precedence to it, even though it was for value, without notice. The answer to this contention is that, in view of section 15 of said act, such is not the proper construction thereof; and in that case, to say the least, the court assumed that, if the mortgagee therein had been a mortgagee for value, without notice, the mechanic's lien would not have been adjudged superior to it. As to the case of Foushee v. Grigsby, it is clear that it is not an authority in support of the construction which counsel urges should be put upon the law as it now stands. The ground upon which it was held in that case that information of the fact that the property in question was being improved when the mortgage was taken was not notice of the liens of the mechanics and material men engaged in improving it was that such information, if notice at all, was only constructive notice. It was not actual notice,—not even actual notice inferred from circumstantial evidence. And though it might be constructive notice, irrespective of statutory determination, the statute under consideration in that case had defined what should be constructive notice of the liens created by it, so as to affect a subsequent mortgagee or purchaser. Inasmuch as information that the improvements were being made was not actual notice, in any respect, and was not constructive notice according to the definition of the statute, it necessarily followed that the subsequent mortgagees were not affected by such information. Such a

process of reasoning can find no room in the construction of the present statute. It provides that the liens created by it, which date from the beginning of the labor or furnishing of the materials, shall not take precedence of a subsequent mortgage or conveyance for value without notice unless a statement has been previously filed as authorized by it. If such statement has been previously filed, the lien is superior to every mortgage or conveyance subsequently made. If not, it is not superior to a mortgage or conveyance subsequently made, which is for value and without notice, but, though such statement has not been previously filed, it is superior to a mortgage or conveyance subsequently made, which is not for value, or, though for value, is with notice of the lien. There is no express reference in the statute to either actual or constructive notice,—much less, any definition of either kind. The only distinction as to kinds of notice which it can be said to recognize in any way is such as arises from the filing of the statement, and such as arises otherwise. In determining, therefore, what is such notice as will affect a subsequent mortgagee or purchaser for value, other than the mere filing of the statement, we have no other guide than the settled doctrines and rules of equity. There is none in the statute itself. Is, then, knowledge or information that certain property which the owner proposes to mortgage or sell is in the state of being improved by mechanics and material men, notice, according to the settled doctrines and rules of equity, of their respective liens, to one who takes a mortgage or conveyance for value from him? It must be held that it is. It is so held by the court of appeals of Kentucky in the case of Association v. Volmering, supra. And it has been so held in the cases of Bank v. Taylor, 91 Tex. 78, 40 S. W. 876, 966; Graton & Knight Mfg. Co. v. Woodworth-Mason Co. (N. H.) 38 Atl. 790. In the latter case, Chase, J., said:

"The building being in the course of erection when the claimant took the mortgages, he would have constructive, if not actual, notice of the contract under which the belting was furnished; and his security would be subject to the statutory lien, if one existed. Institution v. Stone, 52 N. H. 365; Pike v. Scott, 60 N. H. 469, 472."

Now, as to the effect to be given to the other one of the two important facts in this case; that is, to the fact that when Myers' attorney made the loan to Wagner the latter represented to him that the parties signing the release were all the persons engaged in furnishing labor or materials for the improvements then being made upon the property. Does it nullify or destroy the effect to be given to the fact that Myers' attorney knew that the property was being improved? Or, in other words, did he have a right to rely on this representation, and to refrain from further inquiry? The court feels impelled to answer these two questions in the negative. The reason for this is well put in 2 Pom. Eq. Jur. § 601. He says:

"When, however, the grantor, vendor, or mortgagor admits that his title was defective or incumbered, or that there was some outstanding claim upon or equity in the property, or makes any other communication which unexplained would constitute an actual notice, but adds a further declaration to the effect that such defect has been cured, or incumbrance removed, or claim or equity rescinded and destroyed, the purchaser, according to the

weight of authority, is not warranted in accepting and relying upon this explanation or contradiction. The information obtained under such circumstances and from such a source is sufficient to put a prudent man upon an inquiry. The reason of this is plain. The informant is under a strong personal interest to misrepresent or conceal the real facts. While the former branch of his communication is made against his interest, and is therefore more than likely to be true, the latter part is in conformity with his personal interest, and is essentially untrustworthy."

In the case of Littleton v. Giddings, 47 Tex. 109, it was held that looking at the records and inquiring of the grantor is not enough, when an inquiry among the neighbors would have led to the truth. And in the case of Russell v. Petree, 10 B. Mon. 184, Judge Simpson, delivering the opinion of the court of appeals of Kentucky, said:

"It is admitted by the answer the mortgagees had notice at the time the mortgage was executed that the bonds for the lots were in the possession of Russell, having been previously deposited in his hands by the mortgagor as a security for certain purposes. It is alleged, however, that the mortgagor informed them at the same time that, although Russell held the bonds in his possession, he had no further lien upon them or the property, his claim having been previously discharged in full. The information they had, apprising them of the fact that the bonds for the lots were in the possession of Russell, was sufficient to put them upon an inquiry into the nature and extent of his claim. If they relied upon the statements of the mortgagor, they did so at their peril. It was their duty to have ascertained from Russell himself whether he had any claim upon the property. If they failed to do it, the law deems it their own fault, and considers them constructively notified of his equitable rights to their full extent."

The principle upon which these authorities go is that a person put upon inquiry as to an existing claim to or lien upon property with reference to which he is dealing has no right to rely upon the representation of the owner thereof, when it is to the latter's interest not to have such claim or lien discovered, and when there is a disinterested source at hand from which information can be obtained. Such was the case here. Myers' attorney did not even pursue the inquiry with Wagner as far as he might readily have done. The release showed the relation of each man who signed it to the improvements that were being made, and the character of them. It was certain that lumber was being used in making them. None of those who had signed designated himself as having furnished the lumber. It does not appear from the testimony that any inquiries were directed to Wagner as to who had furnished the lumber, and why he had not signed it. Myers' attorney simply accepted Wagner's statement that those who had signed the release were all the lienholders, without more. Further inquiry from Wagner might have disclosed Humpert's claim, and such further inquiry was suggested by the absence of any one who had signed the release designating himself as having furnished the lumber. But, whether Myers' attorney should have pushed the inquiry to this extent with Wagner, there is nothing in the evidence showing that the persons who signed the release—particularly the contracting carpenter—were not within easy reach of any inquiries that might have been directed to them. And, if so, they should have been inquired of, and the representations of Wagner should not

have been entirely relied on. These considerations lead the court to adjudge that Humpert's lien is entitled to priority.

Counsel for Myers urge that because Humpert neglected to file a statement previous to the making of the mortgage, and thus prevented his attorney from discovering the existence of the lien by his examination of the records, it should be postponed to the mortgage. We cannot concur in this position. By such neglect he ran the risk of the property being mortgaged or conveyed to some one for value, without notice of his lien by knowledge of the fact of its being improved or in some other way. No other effect can be given to it. He further urges that what the statute requires, in order to affect a subsequent mortgagee or purchaser, is notice of the lien, and not notice of the improvements being made. This may be true, but, according to the settled rules of equity, notice of the fact that the property is being improved, being sufficient to put the subsequent mortgagee or purchaser on inquiry, is notice of the lien, either actual, inferred from circumstantial evidence, or constructive. That Humpert's lien should have precedence is enforced by the further consideration that, though the burden was on Myers to prove that he was a mortgagee for value, without notice, he has not testified himself at all; that his attorney, who did testify, did not expressly deny that he had notice of Humpert's claim, and expressly state that he believed Wagner's representation to be true, but left it to be inferred only that he had no notice, and so believed; and that no explanation is given how, if the release was executed before the loan and mortgage were made, it came to be dated July 31, 1900,—19 days after the making of the loan and mortgage, which was on July 12, 1900. The finding of the referee is confirmed.