## E. L. Martin & Co., et al. v. A. B. Maggard & Son and Lewis.

(Decided January 13, 1925.)

### Appeal from Leslie Circuit Court.

1. Notice—Ordinarily a Man is Held to Know what a Man of Ordinary Prudence would Know.—Ordinarily a man is held to know what a man of ordinary prudence and judgment would know under the facts known to him.

2. Partnership—Father Liable for Debts Contracted by Son in Business after he Knew it was Carried on in Their Names as Partners. —A father was liable for debts contracted by his son in a store business carried on in names of both as partners, after he knew that the business was being so carried on, where he took no action until creditors were suing for unpaid bills.

3. Evidence—Man is Held to Intend that which he Knows is necessary Consequence of his Act.—A man is held to intend that which he must know is the necessary consequence of his act.

4. Fraudulent Conveyances—Conveyance by which Grantor Stripped Himself of all Property Subject to Execution Held Fraudulent as to Creditors.—Conveyance by one who was then being sued by creditors, by which he stripped himself of all property he had subject to execution, necessary effect of which was to hinder and delay his creditors, would be deemed to have been made with intent to hinder and delay his creditors.

5. Fraudulent Conveyances—Purchaser Held Put on Inquiry as to Reason Why Vendor was Selling all His Property Subject to Execution for Cash.—Purchaser was put on inquiry as to why vendor was selling all the property he had subject to execution for cash, where he knew that vendor was being sued by creditors, and that property he was buying was all the property vendor had subject to execution.

M. C. BEGLEY, J. M. MUNCY and WILL C. HOSKINS for appellants.

J. B. MINIARD for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

A. B. Maggard was a farmer living in Leslie county. About November, 1920, Henry Maggard, his son, opened a store near Causey, Kentucky, about four miles from his father's residence, in the name of A. B. Maggard & Son. The stationery used in the store was so printed and the business was so advertised in calendars sent out to the customers. In the spring of 1921 A. B. Maggard & Son built a storehouse on A. B. Maggard's land about one hundred yards from his residence and ran a store there for about three months in addition to the store near Causey. After three months this store was sold to Bige Maggard, a brother of Henry Maggard. The other store was run until October, 1921, when it burned down. At that time a number of bills for goods bought in the name of A. B. Maggard & Son were unpaid and suits were filed by a number of the creditors against A. B. Maggard &

Son to collect them. On February 13, 1922, A. B. Maggard, in consideration of $3,000.00, cash in hand paid, conveyed to Larkin Lewis the farm on which he resided, which was all the property he owned subject to execution. E. L. Martin & Company filed this action November 28, 1921, to recover of A. B. Maggard and Henry Maggard their debt amounting to $264.14. On May 1, 1922, they filed an amended petition making Larkin Lewis a defendant, alleging that the conveyance by A. B. Maggard to Larkin Lewis was fraudulent and made with the intent to cheat, hinder and delay his creditors. They prayed that the deed be set aside and the land subjected to their debt. A. B. Maggard filed answer denying that he was a member of the firm. He and Lewis both denied that the deed to Lewis was fraudulent. Proof was taken and on final hearing the circuit court entered a personal judgment against Henry Maggard but dismissed the action as to A. B. Maggard and Larkin Lewis. The plaintiffs have filed a transcript of the record and entered a motion for an appeal, their debt being less than $500.00.

Henry Maggard swears that his father knew the business was done in the name of A. B. Maggard & Son from the beginning and acquiesced in it. A. B. Maggard denies this, but admits that he did learn this in June, 1921, and says he told Henry when he sold out to Bige if he bought one more bill of goods in his name he would bring suit against him. But the fact is he did not bring suit or do anything until the storehouse was burned and the creditors were suing him for the unpaid bills. In the meantime the store was run as before in the name of A. B. Maggard & Son.

Both A. B. Maggard and Larkin Lewis testify that the sale of the farm was a good faith transaction, without any intent to hinder or delay the creditors of A. B. Maggard, but they both knew at the time of the transaction of the numerous suits which had been filed against A. B. Maggard as the partner of his son and they both knew that the land was all the property of A. B. Maggard subject to execution.

The rule ordinarily is that a man is held to know what a man of ordinary prudence and judgment would know under the facts known to him. Under this rule it is hard to understand how A. B. Maggard could fail to know the name in which the business of these stores was

done, when he dealt in both of them and one of them was on his land and only a hundred yards from his house. But passing this it is conceded that he so knew in June, 1921, and it appears that the balance due appellants is for a debt created after this. Knowing how the business was then carried on, it was incumbent upon him, if he was unwilling to be regarded as a partner, at once to give notice to those with whom the firm had been doing business. This he failed to do; he took no action until after the store burned in October and he is liable to the plaintiffs for the debt, when knowing how the business was run he allowed it to be continued as before. Fennel v. Myers, 76 S. W. 136, 20 R. C. L. 1067.

> "But, undoubtedly, if a person learns that his name is being used as that of a member of a firm, he is under a duty to prohibit such use, and it is the general rule that when one knows that he is held out as a partner in a particular business he is bound to take such steps as an ordinarily prudent person would take in the circumstances to notify the public as well as individuals to whom he knows the holding out has been given that he is not a partner." 30 Cyc. 393.

As to the conveyance of the land to Lewis made after A. B. Maggard had been sued by the creditors the rule is that a man is held to intend that which he must know is the necessary consequence of his act. He had then been sued by the creditors; the suits were then pending. By that conveyance he stripped himself of all the property he had subject to execution. The necessary effect of the conveyance was to hinder and delay the creditors and he must be held to intend the necessary and natural consequences of his act.

It is said, however, that Lewis did not participate in this intention or have notice of it; but it appears that Lewis knew that A. B. Maggard had been sued for these debts and that the suits were pending. He also knew that the property he was buying was all the property Maggard had subject to execution. He knew that the necessary effect of this conveyance would be to deprive these creditors of the power to make their debts if they got judgment. Land is not ordinarily sold for cash. It is unusual that the whole consideration in a sale of a tract of land should be paid down when the deed is delivered. There was enough here to put Lewis on inquiry as to why

Maggard was selling all the property he had subject to execution for cash.

"This court has frequently held that what is sufficient to put a purchaser upon inquiry as to the facts is equivalent to full notice of all the facts that such inquiry would have disclosed to him." Lain v. Morton, 63 S. W. 286; Allen v. Ligon, 175 Ky. 767; Cable Piano Co. v. Lewis, 195 Ky. 666.

The appeal is granted, the judgment is reversed and the cause is remanded to the circuit court with directions to enter a judgment in favor of appellants against A. B. Maggard for their debt and costs and ordering a sale of the land therefor.