Gere and wife vs. Cushing, &c.

CASE 2—PETITION EQUITY—JUNE 8.

# Gere and wife vs. Cushing, &c.

### APPEAL FROM KENTON CIRCUIT COURT.

1.  A lumberman having a lien on a lease and stable for materials, under the "Mechanics' Lien Law" of February 17, 1858 (*Myers' Supplement*, 300), did not waive his lien by taking a bill, on which no one became liable to him, except his original debtors. This was not taking such a security as is contemplated by section 7 of said act.

2.  A *bona fide* mortgagee, for a valuable consideration, must be regarded as a *bona fide* purchaser within the letter, spirit, and meaning of section 12 of the "*Mechanics' Lien Law*" (*Myers' Supplement*, 305); and such mortgagee, without express or constructive notice, given according to the provisions of said statute, cannot be affected by the liens created by said enactment. (*Snyder vs. Hitt*, 2 *Dana*, 204; *Halbert, &c., vs. McCulloch*, 3 *Met.*, 456.)

JOHN F. & CHARLES H. FISK,              For Appellants,
                       CITED—

*Mechanics' Lien Law, Myers' Sup.*, 300, secs. 1, 3, 7, 12.
*Revised Statutes, sec.* 9, *chap.* 7, 1 *Stanton*, 205.
3 *Met.*, 456–7; *Halbert, &c., vs. McCulloch.*
2 *Dana*, 204; *Snyder vs. Hitt.*
4 *Iowa*, 572–3; *Porter, &c., vs. Green, &c.*
1 *Hilliard on Mortgages*, p. 2, sec. 2, and notes.
2 *Bouvier's Law Dic., pp.* 191, 403.
4 *Kent*, s. *p.* 168; 19 *Johnson*, 283; *Jackson vs. Campbell.*
47 *Maine*, 514; *Pierce vs. Faunst.*

CARLISLE & O'HARA,                     For Appellees,
                       CITED—

*Myers' Sup.*, 303, secs. 7, 9, 12; *Mechanics' Lien Law.*
3 *Met.*, 456; *Halbert, &c., vs. McCulloch, &c.*
*Revised Statutes, sec.* 9, *chap.* 7.

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Cushing and others, as lumbermen, mechanics, &c., claim a prior lien upon a lease and stable thereon, in Covington, and A. H. Gere and his wife also claim a prior lien by mortgage to the wife.

. The court having postponed Gere and wife to the other lien claimants, the proceeds will be entirely absorbed, and they will get nothing; but to correct the error, in not allowing them priority, they prosecute this appeal.

·  It is insisted, first, that Cushing, the largest lien claimant, has entirely waived his lien by taking security on a bill of exchange, which was drawn by him March 12, 1867, at sixty days, payable to his own order, for nine hundred and thirty-three dollars and sixty-three cents, accepted by Jas. E. Dunell and F. G. Oxley, indorsed, first, by Z. Cushing, and then by Jas. Ryon. Dunell confesses in his answer that he was a partner at the time the lumber was ordered, and liable therefor. He had also previously, with the Oxleys, executed a note for it; he could, therefore, in no just sense, be regarded as a security, but was a principal. Ryon indorsed after Cushing, on the bill of exchange, to give it credit; and though he was security to the holder to whom Cushing passed it, he was not security to the latter; but Cushing was responsible to him both as antecedent indorser and drawer. Cushing, therefore, had not lost his lien by taking security in the sense provided in *section 7, title 86, Myers' Supplement,* 303. But whether he and the other lien claimants had taken the necessary steps to preserve their priorities over the mortgagee, is a more serious question. The lien to such persons is given by said statute as against the debtor, for one year; but by the last paragraph in section 5, it is provided, that " no

lien shall exist in favor of any person or persons, in virtue of this act, who shall not have proceeded, within the time aforesaid, to enforce said lien; and the *lis pendens shall be construed to commence from the time of filing the petition*."

By section 12 it is enacted: "The lien herein provided shall not be effectual against a *bona fide* purchaser for a valuable consideration, without notice, actual or constructive, of such lien; but if the purchaser receives notice of the lien before the payment of the whole purchase money, the lien shall operate on the purchase money remaining unpaid. The pendency of a suit to enforce the lien, or a written statement of the lien, its amount, and the property liable to it, filed in the clerk's office of the county court of the county in which the land is situated, shall each be deemed constructive notice of the lien to subsequent purchasers."

As no such written statement was filed by the lien claimants in the county clerk's office, and no suit commenced until after the recording of this mortgage, it is simply a question whether the mortgagee is to be regarded as a *bona fide* purchaser, within the intendment of said statute, and, therefore, unaffected by said liens.

In *Bouvier's Law Dictionary, 2d vol., page* 403, purchase is defined, "*in its most enlarged and technical sense, to signify the lawful acquisition of real estate by any means whatever, except descent.*"

Again, it is therein said, that "there are six ways of *acquiring a title by purchase,* namely—1. By deed; 2. By devise; 3. By execution; 4. By prescription; 5. By possession; 6. By escheat."

At page 189 it is said: "A legal mortgage of lands may be described to be a conveyance of lands by a debtor to his creditor, as a pledge and security for the

repayment of a sum of money borrowed, or performance of a covenant, with a proviso that such conveyance shall be void on payment of the money and interest on a certain day, or the performance of such covenant by the time appointed, by which the conveyance of the land becomes absolute at law, yet the mortgagor has an equity of redemption."

In *Snyder vs. Hitt* (2 *Dana*, 204), under the act of 1811, which gave a landlord the right to distrain the goods of his tenant or sub-tenant, but if a tenant should have made a *bona fide* sale of his goods, they were not liable, this court held, that a mortgage by a tenant was a sale of the goods within the meaning of the statute, and a prior lien claim to that of the landlord.   And in *Halbert, &c., vs. McCulloch, &c.* (3 *Met.* 456), *in construing section 9, chapter 7, Revised Statutes, 1 Stanton, 205, on Boats and Navigation*, which provides that the lien therein given shall not be enforced against a *purchaser* without notice, unless, &c., this court held that a mortgagee was protected, he being, in legal contemplation, a *purchaser*.

By the second proviso in the first section of this mechanics' lien law of February 17, 1858 (*Myers' Supplement*, 300), it is enacted, "that nothing herein contained shall be construed to affect or impair or injure any lien or liens, whether by mortgage, deed of trust, or otherwise, which any person or persons, body-politic or corporate, may have on the property by this act."

This meant simply to declare, that, by giving these statutory liens, it was not intended to impair any previously existing liens created by the act of the parties; but was not meant to define or declare who should be deemed *bona fide* purchasers under the twelfth section of the act.

According to the interpretation of text-writers and our judicial determinations, a *bona fide* mortgagee for a valuable and *bona fide* consideration, must be regarded as a *bona fide* purchaser within the letter, spirit, and meaning of said statute; and when so, without express or constructive notice given, according to the provisions of said statute, cannot be affected by the liens created by said enactment. Hence Mrs. Gere, not having express notice, and no constructive notice being set up when she loaned the money and took the mortgage, she cannot be affected by these statutory liens; but these must be postponed until her mortgage is liquidated.

Nor will the provision, that if all the purchase money be not paid when actual or constructive notice is given, the lien shall attach to it, have any more extended effect than the language naturally or ordinarily imports; that is, when all the purchase money be not paid, whether this be by actual, unconditional sale or mortgage, &c., the statutory lien will attach upon the proper notice being given; but this cannot be construed as restricting the general and legal meaning of the term *purchaser*.

Nor does the term *bona fide*, prefixed to it, any more restrict its legal meaning, as used in this statute, than did the same term used in the above-noticed statute of 1811, in connection with the noun "*sale*," but was used in its strict legal sense and meaning; that is, that the purchase must be made "in or with good faith."

Wherefore, the judgment is reversed, with directions for further proceedings consistent herewith.