JUDGE PRYOR
delivered the opinion oe the court.
The appellants in this case were employed by Grigsby & Robinson to make improvements, in the way of additional buildings and otherwise, to their hotel in the city of Lexington. They are now, as mechanics and material-men, attempting to enforce their liens upon the property under the provisions of the mechanics’ lien law of 1858.. (Myers’s Supplement, page 300.)
*77 They commenced their work upon the building in the fall of 1865, and completed the improvements in the summer of 1867. Some of the mechanics completed their portion of the work prior to that time.
During the progress of the work upon the building the appellee, Huston, and his partner, Downey, became liable, as the sureties of Grigsby & Robinson, for several thousand dollars; and upon assuming this liability the firm executed to Huston & Downey a mortgage on this same property, to indemnify them as sureties. This mortgage was executed in January, 1866, and recorded.
Grigsby & Robinson having failed, made an assignment of their property to Goodloe, and the latter, as assignee, instituted this action in the Fayette Circuit Court for a settlement of his accounts, and asking the chancellor to determine the rights of those of the creditors who were asserting liens upon the property.
Several actions had been instituted by parties asserting liens, and were consolidated with the action instituted by the assignee, and heard together.
The Northern Bank of Kentucky and the other creditors for whose debts Huston & Downey were liable as sureties, in conjunction with the latter, filed their answer and cross-petition in the ease, asking the foreclosure of the mortgage to Huston & Downey, denying any notice of the existence of the liens asserted by the appellants at the time it was executed, and insisting that the mortgage has priority.
It is maintained by appellants — first, that their liens as mechanics and material-men began with their work, and continued until the work was completed, not only as against their employers, but as against innocent purchasers; 'second, that Huston & Downey had notice of their liens.
In the cases of Nazareth Literary and Benevolent Institution against Lowe (1 B. Mon.) and the Trustees of Caldwell *78 Institute against Young (2 Duvall) the construction by this court of the mechanics’ lien law then in existence and applicable to those cases gave to the mechanic, from the inception of the work to its consummation, a lien for his labor, etc., and no intervening charge upon the estate could defeat the lien, provided the mechanic asserted his lien within the time prescribed by the acts controlling those cases.
The court, in delivering the opinion in the last of the cases referred to, said: “Any other construction of the beneficent statute enacted for the security of building mechanics might frustrate its objects and make it a mockery.”
At the time those cases were decided the mechanic had a lien on all the interest his employer had in the premises, or buildings upon which the work was executed, or for the construction of which the materials were furnished. There was no saving in those acts in favor of purchasers without notice, or any provision by which the mechanic’s lien would be defeated, in the event he complied with the provisions of the law;, in order to preserve his lien.
The legislature, subsequent to the rendition of the opinions referred to, enacted a mechanics’ lien law applicable to the whole state, by which a lien is given the mechanic, but at the same time the rights of innocent purchasers are protected. (Myers’s Supplement, page 305, section 12.)
This general law was in many respects similar to the law embodied in the General Statutes, the only essential difference being that under the present law the claim of the mechanic must be registered with the county clerk within sixty days after he ceases to labor or furnishes the material, and proceedings instituted to enforce the lien within six months from the day of filing the account in the clerk’s office. (Section 8, General Statutes, page 622.) Under the provisions of the act of 1858 the limitation was twelve months.
By the 1st section of the law now in forco the mechanic has *79 a lien not only on the building or improvement, but “ on the land upon which such improvements may have been made, or on any interest such owner has in the same, to secure the amount thereof, with the costs.”
By the 14th section “ the liens declared in this chapter shall not be effectual or valid against a bona fide purchaser for a valuable consideration without notice, actual or constructive; but if such purchaser receives notice of the lien before the payment of the whole of the purchase-money, the lien shall operate on the purchase-money remaining unpaid.”
The pendency of a suit to enforce the lien, or the filing of the account or statement in the clerk’s office of the county court, as required by the 6th section of this chapter, shall be deemed constructive notice. Like provisions were contained in the act of 1858.
It is manifest that the object of the legislature in embodying these sections in the act of 1858, as well as in the present law, was to remedy what was supposed to be a defect in the original mechanics’ lien laws, all of them being local in their application, by protecting innocent purchasers, in making the liens of mechanics subordinate to their rights when acquiring the property without notice, actual or constructive, of the lien.
There was no constructive notice in this case to the mortgagees, Huston & Downey, as there was no suit pending to enforce the liens, nor had any evidences of the demands of appellants been filed in the county clerk’s office, as provided by the 6th section of the act. No such claims could have been filed by some of the mechanics, as their part of the work had not been completed. The 14th section, however, was intended to protect the innocent purchaser, whether the work was completed or not. If incomplete, no constructive notice could well be given; and in the absence of actual notice that the lien existed — that is, that the money for the work or material is unpaid — the purchaser for value holds the property as *80 against the lien. Nor can there be any equitable apportionment between the claim of the mechanic and that of the mortgagee. If the whole of the purchase-money is paid, the lien, without notice, actual or constructive, is lost; and if not all paid, the lien exists only on the purchase-money unpaid.
So in the case of a mortgagee, if the liability for which the mortgage was given exists, the lien to the mechanic is subordinate in the absence of notice.
This court, in the case of Gere and wife against Cushing (5 Bush, 304), in construing this identical section of the statute of 1858, adjudged that a bona fide mortgagee for a valuable consideration must be regarded as a bona fide purchaser within the letter, spirit, and meaning of section 12 (now section 14) of the mechanics’ lien law, and such mortgagee, without express or constructive notice given according to the provisions of said statute, can not be affected by the liens created by said enactment. Hence Mrs. Gere, having no express notice, and no constructive notice being set up when she loaned the money and took the mortgage, can not be affected by these statutory liens, but these must be postponed until the mortgage is liquidated.
If this section of the statute is to have any practical operation, we can suggest no other construction to be given it in order to carry out the legislative intent. This construction of the section in question in the case of Gere and wife was given long prior to the adoption of the General Statutes, and its reenactment amounts to a legislative sanction of what this court then supposed was the intention of the legislature. It is true the law inclines to favor such liens; still they exist alone by reason of the statute, and the class of persons designated by the act are allowed a security for their debts that is denied to others; and while such a construction should be given the law as will protect the mechanic whose claim is embraced by its provisions, the limitations and conditions upon which such *81 liens depend must at the same time be regarded. One of the limitations is that the lien shall not affect a bona fide purchaser for a valuable consideration, without notice, actual or constructive. It matters not how much labor has been performed by the mechanic on the improvement, or the addition to its value by reason of this labor, an innocent purchaser acquiring the title holds the property as against the statutory lien.
The statute gives to the mechanic and material-man a lien on the improvement, and also on the land it stands upon, protects the lien in the event the owner is evicted by a paramount title, and, by reason thereof, is entitled to compensation for improvements, by giving the mechanic a lien to the extent of the compensation the owner may be entitled to.
These liens are also enforced against purchasers when the claim is filed in the county’ clerk’s office, as provided by section 6 of the statute, or in cases where the purchaser has notice. No such lien exists by operation of law in favor of any other class of creditors.
These were doubtless the only advantages intended to be given by the provisions of the statute to this class of labored over others; and their only certain protection against the sale of the property to innocent purchasers during the progress of the work is to secure the performance of the contract on the part of the employer by a lien of record.
The evidence shows that Huston and Downey were both residents of the city of Lexington, where the property improved was located; that Downey was a brother-in-law of Robinson, one of the employers, and both Huston and Downey knew that the improvements were being made. It is urged, therefore, that this was notice to these parties of the existence of these liens.
It is evident, from the proof, that all the parties regarded the firm of Grigsby & Robinson as amply able to meet their *82 liabilities, and that no actual notice was given to or had by either Huston or Downey, at the time the mortgage was taken, of any indebtedness on the part 'of Grigsby & Robinson to these appellants. The execution and recording of the mortgage was' notice to appellants of Huston & Downey’s lien; and for the work afterward performed by them they only had a lien subordinate to the mortgage; and we have already seen that, being innocent purchasers, the claim of appellants existing prior to the mortgage creates no lien as against the mortgage debt.
It is argued that, if this construction is given the statute, the employer may at any time sell or dispose of his property, and, if to an innocent purchaser, the laborer loses his debt. Such is the result of the construction given the statute; and to allow a lien in such a state of case would be a practical repeal of that section of the act intended to protect purchasers for value without notice.
The fact that some of the appellants were at work on the property, and material being furnished by others, at the time the mortgage was executed was not an actual notice of the existence of the lien. It was notice that the property was being impaired, but gave no evidence to the puz’chaser of the nature of the contract between the employer and the employees, or that the money for the labor and matez-ials furnished was unpaid. It is the lien that the purchaser must have notice of, and not the fact that the property is being improved.
If the fact that work was being performed on the building was sufficient to put the purchaser on inquiry, it could only be deemed constructive notice, azzd would not affect the rights of the purchaser.
The statute creating the lien in favor of the mechanic has defined the character of constructive notice necessary to defeat the claim of the purchaser, and give to the mechanic a prior Tien: “The lien shall not be effectual or valid against a bona *83 fide purchaser for a valuable consideration without notice, actual or constructive. The pendency of a suit to enforce the lien, or the filing of the account or statement in the clerk’s office of the county court, as required by the 6th section of this chapter, shall be deemed constructive notice;” showing clearly that the legislature never contemplated that the purchaser should make inquiry of the laborer on the building to know whether he was paid by the day, or by the contractor or the employer, or whether he was himself the contractor, and the employer was in arrears to him.
Constructive notice, as fixed by the statute, consists in filing the claim in the county clerk’s office or in bringing the action to enforce the lien; and as neither mode can be adopted until the work is completed, the purchaser must have actual notice of the lien so as to affect his rights. If the law is defective, the legislature alone has the power to amend it; and to charge the purchaser by reason of a constructive notice other than that designated by the act creating the lien would be in disregard of the plain letter of the statute.
The architect or superintendent of the building had no lien by reason of his services. The character of labor performed by him is not such as is embraced by any of the provisions of the statute.
The judgment of the court below must be affirmed.