## First National Bank of Louisville, Kentucky v. Chowning Electric Company, et al.

(Decided March 8, 1911.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Liens—Priority—Mortgage—Mechanic's and Material Man's Lien.— A mechanic's or material man's lien for labor and material furnished before the execution of a mortgage has priority over the mortgage where the mortgagee at the time the mortgage takes effect has notice not only that the work has been done and the material furnished by the claimant, but the amount due them on their contracts and that they would assert a lien to secure their respective claims.

2. Notice—Officers and Directors of Two Corporations.—Where certain officers and directors of a bank are also the officers and directors of a corporation having dealings with the bank, knowledge and information obtained by such officers and directors whi'e acting in such capacity for such corporation will be construed as r' tice to the bank where there is no conflict of interests between the two corporations, or between the officers and directors personally and the bank at the time the notice is received.

HELM & HELM, FURLONG, WOODBURY & FURLONG for appellant.

GEORGE WEISSINGER SMITH for appellee, Ridgway, Dynamo & Engine Co.

GIBSON, MARSHALL & GIBSON and WM. W. CRAWFORD for appellee, F. A. Klegg & Co.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

The Jefferson County Electric Company was organized in the year 1906 for the purpose of furnishing electric light to the White City, a place of amusement, in Louisville, Kentucky, and to others. To this end it purchased about 3 1-2 acres of land in Jefferson county and erected a brick building thereon. On December 11th, 1906, J. R. Chowning entered into a written contract with the company to equip its plant for the sum of $31,065.70. Subsequently, Chowning organized the Chowning Electric Company, and transferred and assigned to it his assets and contract rights. At the time of the institution of this action there was a balance due the Chowning Electric Company of $15,498.15. Alleging that it had a lien on the property of the Jefferson County Electric Company, it brought this action to enforce the same. To this action appellees, F. A. Clegg & Company and the Ridgway Dynamo & Engine Company, were made parties. Each of these parties came in and asserted a lien; the former for $4,556.40, and the latter for $2,688.03. Prior to the institution of the action the Je:erson County Electric Company had executed to the United States Trust Company, as trustee, a mortgage to secure bonds amounting to $30,000. This mortgage was executed in pursuance of a resolution adopted by the directors of the Jefferson County Electric Company May 25th, 1907. The mortgage was put to record on June 15th, 1907. On July 24, 1907, the bonds were delivered to appellant, the First

National Bank, as collateral security to secure a loan of $14,000. Of this sum $10,502.61 had theretofore been loaned by the bank to the Jefferson County Electric Company, leaving only $3,497.39 as a contemporaneous loan.

The Westinghouse Electric & Manufacturing Company furnished certain machinery of the value of $5,-612.56. The amount of its claim was guaranteed by the directors of the Jefferson County Electric Company. On September 28th, 1907, the claim of the Westinghouse Electric & Manufacturing Company was paid by the directors of the Jefferson County Electric Company in conformity with their guaranty, and its claim against the Chowning Electric Company was assigned to Charles J. Doherty, trustee. On November 29th, 1907, the Chowning Electric Company assigned its lien to the extent of the claim paid to Charles J. Doherty, trustee. In this action the Westinghouse Electric & Manufacturing Company has appeared and asserted a lien under the Chowning Electric Company for the benefit of Charles J. Doherty, trustee. The First National Bank is also a party, asserting that its lien is superior to that of any of the lien-claimants.

During the progress of the action the assets of the plant of the Jefferson County Electric Company were sold, and brought about $8,000. In the distribution of the assets the chancellor held that appellees, F. A. Clegg & Company and the Dynamo & Engine Company, had a lien superior to that of the First National Bank. From that portion of the judgment this appeal is prosecuted.

Section 2463, Kentucky Statutes, is as follows:

"A person who performs labor or furnishes materials in the erection, altering or repairing a house, building or other structure, or for any fixture or machinery therein, or for the excavation of cellars, cisterns, vaults, wells, or for the improvement, in any manner of real estate by contract with, or by the written consent of, the owner, contractor, sub-contractor, architect or authorized agent, shall have a lien thereon, and upon the land upon which said improvements shall have been made or on any interest such owner has in the same, to secure the amount thereof with costs; and said lien on the land or improvements shall be superior to any mortgage or incumbrance created subsequent to the beginning of the labor or the furnishing of the material; and said lien, if asserted as hereinafter provided, shall relate back and take effect

from the time of the commencement of the labor or the furnishing of the materials: Provided, That such lien shall not take precedence of a mortgage or other contract, lien or bona fide conveyance for value without notice, duly recorded or lodged for record according to law, unless the person claiming such prior lien shall, before the recording of such mortgage or other contract lien or conveyance, have filed in the clerk's office of the county court of the county wherein he shall have performed labor or furnished material, or shall expect to perform labor or furnish materials, as aforesaid, a statement showing that he has performed or furnished, or that he expects to perform or furnish, such labor or materials, and the amount in full thereof, and his lien shall not, as against the holder of said mortgage or other contract lien or conveyance, exceed the amount of the lien claimed, or expected to be claimed, as set forth in such statement. The statement aforesaid shall, in other respects, be in the form of the tenor prescribed by section 2468. The liens provided for herein shall in no case be for a greater amount in the aggregate than the contract price of the original contractor; and should the aggregate amount of liens exceed the price agreed upon between the original contractor and the owner, then there shall be a pro rata distribution of the original contract price among said lien-holders."

It was the contention of appellees in the court below, and the chancellor held, that the bank took the bonds as collateral security for its debt with knowledge of the lien-claimants' rights, and that the bank's mortgage lien was, therefore, postponed until the satisfaction of appellees' claims. To determine the propriety of the court's action it will be necessary, briefly, to review the facts.

C. C. McClarty was president of the First National Bank and also a director in the Jefferson County Electric Company. C. C. Bickel was vice-president of the First National Bank and president and director of the Jefferson County Electric Company. Charles J. Doherty was a director in both concerns. James Clark, Jr., was a director in the bank, and bid on some of the work of construction in connection with the Chowning Electric Company. Hugh L. Rose was a clerk at the bank and secretary of the electric company. All the money which the electric company had to its credit was deposited in the First National Bank. Nearly all the meet-

ings of the directors of the electric company were held
in the office of the bank. The original contract made with
Chowning was signed by Bickel. It was read to and ap-
proved by the board of directors. At this meeting Bickel,
McClarty and Doherty were present. They all knew,
therefore, that the Chowning Electric Company was the
original contractor. It also appears from the testimony
that they knew that appellees, Ridgway Dynamo & En-
gine Company and F. A. Clegg & Company, were sub-
contractors; indeed, Bickel testified that he knew that
those engaged in the construction of the plant had not
been paid, and that they were entitled to have and hold
mechanic's liens against the property. When the bank's
claim was first asserted it appears that it was based upon
the note executed November 24th, 1907. While the plead-
ings were in that condition, Chowning testified that prior
to that time he had talked with McClarty, Bickel and
Doherty in regard to his claim and that of the subcon-
tractors. He then stated to them how much was due, and
Doherty said he was sorry the matter could not be fixed
up, but that it was Chowning's duty to protect his cred-
itors by filing a lien. Subsequently it developed that the
note executed November 24th, 1907, was simply the re-
newal of a note which was first executed on July 24th,
1907. In a second deposition, Chowning testified that
during the month of June, prior to July 24th, 1907, he
went to see McClarty and told him he would have to file
a lien to protect his creditors, and that Clegg & Com-
pany and the Ridgway Dynamo & Engine Company were
creditors. McClarty advised him to go and have a talk
with Bickel. He then went to Bickel and had practically
the same conversation he had just had with McClarty.
In that conversation Bickel was told the amount that
was due Clegg & Company; also the amount of all the
bills, and that they would have to protect themselves by
filing a lien. This testimony of Chowning is corrobor-
ated by that of F. A. Clegg, who testified that McClarty,
Bickel and Doherty knew that the money was due the
lien-claimants and that they intended to protect them-
selves by filing a lien. This information was imparted
to Bickel and McClarty some time in June. Chowning
was with them when they went to the bank. McClarty
knew the amount that was due Clegg & Company.
Chowning told him the amount that was due the
Chowning Electric Company. The testimony of Mc-

Clarty, Bickel and Doherty is to the effect that, while they knew the work was going on, they believed the contractors would all be paid, and they had no knowledge of the amount due each one, or that they expected to, or would claim a lien. McClarty admits, however, having a conversation with Clegg and Chowning, but was of the opinion that the conversation took place later in the summer after July 24th, 1907.

We deem it unnecessary to give the evidence more at length; suffice it to say that we see no reason to disturb the finding of the chancellor on the question of fact. We think, upon the whole case, it was perfectly plain that McClarty, Bickel and Doherty had knowledge of the amounts that were due appellees and the fact that appellees would claim a lien, and that this knowledge was imparted to them prior to July 24th.

Furthermore, we conclude that the notice was sufficient. It was given to the president and vice president of the bank, and it was not a mere knowledge on their part that the work was being performed, but they knew that the lien-claimants had not been paid in full, that there was a balance due them, what the balance was, and that they would assert a lien to secure the same. (Sacheas v. Boston and Paris, et al., 31 Ky. Law Rep., 157; Connecticut Mutual Life Insurance Co. v. Scott, et al., 81 Ky., 540.)

But it is insisted that inasmuch as McClarty, Bickel and Doherty were directors both of the Jefferson County Electric Company and of the bank, notice to them was not notice to the bank because of the conflict of interests developed by the facts of this case. The solution of this question depends upon the condition of affairs at the time it is alleged notice was given. At that time the Chowning Electric Company and the other lien-claimants had performed a considerable portion of their respective contracts. The Jefferson County Electric Company had at that time overdrawn its account in appellant bank. Each of these claims was a valid one against the electric company. To the extent of its assets it had to pay the lien-claimants and the bank at all hazards. So far as the electric company was concerned, it was immaterial whether the bank or the lien-claimants were paid first. There was, then absolutely no conflict of interests between the bank and the electric company. Nor is there now any contest in this action between the bank and the

Jefferson County Electric Company. It is perfectly plain therefore, that so far as the relationship which they sustain to the two corporations is concerned, there is nothing to show that it was the duty of McClarty, Bickel and Doherty to withhold from the bank information which they obtained as directors of the electric company. On the contrary, it was their duty to impart such information to the bank, for in so doing they were not in anywise acting against the interests of the electric company.

But it is insisted that the conflict of interest grows, not out of the relations which the electric company and the bank sustain, but out of the relations which McClarty, Bickel and Doherty sustain to the bank because of their guaranteeing the claim of the Westinghouse Electric & Manufacturing Company and taking an assignment thereof from the Chowning Electric Company, and that in this action Doherty, as trustee, is now asserting a lien claim as against the bank. At the time, however, when the notice was given, there was nothing to show that the directors of the electric company would ever be called upon to pay the claim of the Westinghouse Electric & Manufacturing Company, or that they would ever undertake to enforce it by lien. They did not pay this claim until September 28th, 1907, and did not take an assignment of that company's alleged lien until November 29th, 1907. At the time the notice was given, then, there was no such conflict of interest between themselves, personally, and the bank as would prevent their receiving notice on behalf of the bank. The fact that a conflict of interest subsequently developed, did not take away the notice they had already received before such conflict arose. Furthermore, the loyalty of McClarty, Bickel and Doherty to the bank in all the transactions involved in this action is perfectly manifest. In every stage of the proceedings they have shown their allegiance to the bank, and it is not because of any willingness on their part to testify against the bank's interest that the fact of notice was proved.

Judgment affirmed.