## Kentucky Lumber & Mill Work Company, et al. v. Kentucky Title Savings Bank & Trust Company.

(Decided May 9, 1919.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division.)

1. Mechanics' Liens—Priority.—The lien of a mechanic or materialman, provided by section 2463 Ky. Stats., is superior to the lien of a mortgagee, where the mortgage lien is created after the commencement of the labor or the furnishing of the materials for which a lien is asserted, unless the mortgage was taken for value, in good faith and without notice of the opposing liens.

2. Mortgagor—Advancements—Mechanics' Liens.—A mortgage taken to secure future advancements takes effect, and becomes enforcible as the advancements are made, and where such a mortgage is taken to secure future advancements for the purpose of constructing a building, after the mechanic or materialman has commenced under his contract to do labor, or to furnish materials, and the mortgagee has actual notice of the equity of the mechanic or materialman, when he makes an advancement to the mortgagor, his lien is inferior to the mechanic's or materialman's lien, to the extent of the amount of the advancement.

D. R. CASTLEMAN and JOSEPH J. HANCOCK for appellants.

KEITH L. BULLITT and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

Chas. Wright purchased a lot in the city of Louisville, on the 17th day of December, 1915, for which he promised to pay the sum of $800.00. He paid $50.00 of the agreed price and the vendor retained a lien in the deed, which he executed to Wright for the lot, to secure the remainder of the purchase price. Wright, at once, began to nego-. tiate with material men, mechanics and laborers, for the erection of a dwelling house upon the property. He entered into a contract with the appellant, Kentucky Lumber & Mill Work Company, to furnish certain materials to be used in the construction of the house, and under this contract, the company began to deliver material upon the ground, where the house was to be erected on the 30th day of December, 1915, and including the 14th day of January, 1916, it delivered materials under the contract, which, at the contract prices, amounted to the sum of $648.23, and which were used in the construction of the building. Wright promised to pay the company one-half of the amount of the account, when the roof should be put upon the house, and the remainder, on the 15th day of January, 1916. Wright, also, contracted on the 30th day of December, 1915, with the Carl Althaus Company, to do work and furnish materials to aid in the construction of the house, and between that date and January 12, 1916, this company, under its contract, did labor and furnished materials in the sum of $134.45, concluding its contract on the 11th day of January, 1916. Various other persons, under contracts with Wright did labor and furnished materials, in the construction of the house, but, as they are not appealing from the judgment, their claims will not be considered. About the 30th of December, Wright opened negotiations, with the appellee, Kentucky Title Savings Bank & Trust Company, to make a loan to him of $2,500.00, to be used in constructing the building, at the same time submitting the plans and specifications of the proposed building. The appellee caused an appraisement of the lot to be made, and ascertained, that the value of the naked lot, was only $700.00, but, with the completion of the proposed building, it would be of the value of $3,500.00. It, also, ascertained, that at that time, excavations were being made upon the lot, for the purpose of the erection of the building. Wright, on the 4th day of January, 1916, made application, in writing, to the Bank & Trust Company, for the loan, when the latter caused an examination of the title

to the lot to be made, and agreed to make the loan, and, on the 8th day of January, 1916, Wright executed his promissory note to the Bank & Trust Company, for the $2,500.00 to be paid, in six hundred and sixty-three equal weekly installments, and with the provision, that if he failed to make either of the weekly payments, all of the installments should then become due and collectible. To secure the payment of the note according to its terms, Wright executed to the Bank & Trust Company, a mortgage upon the lot, upon which the house was being built, and the mortgage was recorded in the office of the clerk of the county court, on the 11th day of January, 1916. While the note was executed for the entire amount of the loan, as though it had all been furnished, at the date of the note, it was not so furnished, but the loan was made upon an agreement, that the Bank & Trust Company, was to retain the amount, deposited to the credit of an account, termed a ''special,'' and which was used by the Bank & Trust Company, in conducting loans made for the purpose of erecting buildings, and after the payment of certain fees to the Bank & Trust Company, out of it, for causing the appraisement to be made, and the investigation of the title to the lot, for handling such a loan, and for thereafter investigating to see if there were any liens upon the property or taxes unpaid upon it, and reporting such matters to the mortgagor, and causing the release of liens for materials and construction, and causing the property to be insured, if deemed needful, the remainder of the loan was to be advanced to the mortgagor as the erection of the building progressed. The mortgagor was not to receive any of the money for any purpose except to pay for the materials and labor, as the erection of the house progressed, and not until the improvements to be paid for, were put upon the lot, when the men, who furnished the materials would be paid for them, by the Bank & Trust Company, upon bills, endorsed as correct by the mortgagor. There was no express agreement, that the money loaned, would not be paid to the mortgagor, but, was to be paid to him under the circumstances, above stated. Out of the amount for which the note was executed, the Bank & Trust Company, on January 11th paid the sum, which Wright yet owed upon the lot, and which amounted to the sum of $753.13, and on the same day, paid the Kentucky Title Company, for the examination of the title, $30.75, and to

itself, the sum of $62.50, for the services to be rendered, by it, as above stated. On January 12th it advanced to Wright, the sum of $300.00 and on January 15, the sum of $450.00, leaving a balance in its hands of $903.62. On the 15th day of January, Wright fled the country, and has not been since heard of, leaving his building partially completed, and his creditors, for labor and materials, unpaid.

Neither of the parties, who furnished materials or performed labor in the construction of the building, filed in the clerk's office, the preliminary statement showing, that he had performed or furnished, or expected to perform labor or furnish materials, before the recording of the mortgage of the Bank & Trust Company, as provided by section 2463, Ky. Stats., except one of them, who filed a statement showing a lien for an insignificant amount, but, after the recording of the mortgage on the 11th day of January, the appellant, Kentucky Lumber & Mill Works Company, and the Carl Althaus Company, each filed the statements entitling them to a lien upon the house and lot, as provided for, by section 2468 Ky. Stats., the one on the 22nd day of January, and the other, on the 19th day of January, and many others, who performed labor or furnished materials, did likewise, within the time, to create liens, in their behalf. The appellant, Kentucky Lumber & Mill Works Company, sought to enforce its lien and obtained an attachment upon the sum of $903.12, of the loan, which the Bank & Trust Company had not yet advanced or paid to Wright. The other lien holders were made parties to the action, and upon a final hearing, the court adjudged, that the lien of the Bank & Trust Company, by reason of the mortgage, was superior to the liens of any of the materialmen or laborers, and that it had a right to credit its note with the amount of the loan, which had not been advanced, and dismissed the attachment. The property failed to sell for a sufficiency to pay all the liens, and from the judgment, the Kentucky Lumber & Mill Works Company, and Carl Althaus Company, have appealed.

No case has ever been determined by this court, where the state of facts were similar to those, in the instant case, and the judicial determinations, in other jurisdictions, have been controlled by statutes essentially different from the one in force in this state upon the same subject, and many of the adjudications of this court

touching the liens of materialmen and laborers, have been rendered, when the provisions of the statute laws were different from those now in force. The liens, which appellants sought to enforce, are creatures of the statutes, and their validity and dignity must be determined by the provisions of the statutes, and the application of such equitable principles as apply in the absence of express statutory provisions. The statute so far as same is applicable to the facts of this case, is as follows:

"2463. Lien of—how perfected—amount of—mortgage or conveyance—notice. A person who performs labor or furnishes materials in the erection, altering or repairing a house, building or other structure, or for any fixture, or machinery therein, or for the excavation of cellars, cisterns, vaults, wells, or for the improvement in any manner of real estate by contract with, or by the written consent of, the owner, contractor, subcontractor, architect, or authorized agent, shall have a lien thereon, and upon the land upon which said improvements shall have been made, or on any interest such owner has in the same, to secure the amount thereof with costs; and said lien on the land or improvements, shall be superior to any mortgage or encumbrance created subsequent to the beginning of the labor or the furnishing of the materials; and said lien, if asserted as hereinafter provided, shall relate back and take effect from the time of the commencement of the labor or the furnishing of the materials, . . . and provided, that such lien shall not take precedence of a mortgage or other contract, lien or *bona fide* conveyance for value without notice, duly recorded or lodged for record according to law, unless person claiming such prior lien shall before the recording of such mortgage or other contract, lien or conveyance, have filed in the clerk's office of the county court of the county wherein he shall have performed labor or furnished materials, or shall expect to perform labor or furnish materials as aforesaid, a statement showing that he has performed or furnished, or that he expects to furnish such labor or materials, and the amount in full thereof and his lien shall not as against the holder of said mortgage, or other contract, lien or other conveyance, exceed the amount of the lien claimed or expected to be claimed as set forth in such statement. . . ." It will be observed, that one rendering labor or furnishing materials, in the erection of a house, to secure the payment

of his debt, has a lien upon the house and the land upon which it is erected, superior to any mortgage or encumbrance, which is created subsequent to the beginning of the labor or furnishing of the materials, if the lien is asserted, in the manner and within the time provided by section 2468 Ky. Stats., and when it is so asserted, it relates back to, and takes effect from the time of the commencement of the labor or the furnishing of the materials.   The exception allowed by the statute to the superiority of the lien of the materialman or laborer, is the lien created by a mortgage, or other contract, lien or *bona fide* conveyance for value without notice duly recorded or lodged for record, according to law, and the superiority of such latter character of liens, is avoided, if the materialman or laborer, before the mortgage, or other contract lien or conveyance is recorded, shall have given notice by filing in the clerk's office, a statement showing that he has performed labor or furnished materials, or intends to do so, and the amount of his then claim, or what he expects to claim.   The statute, it will be observed, does not give to the materialman or laborer, a superior lien to a mortgage or encumbrance created upon the property, and of which there is notice actual or constructive, before the commencement of the labor, or the beginning of the furnishing of materials.   In the instant case, the appellees' mortgage having been recorded after the appellants had commenced to labor and to furnish materials, although the appellants had given no constructive notice of having worked or furnished materials by filing in the clerk's office, a statement of the labors performed or materials furnished, or what they expected to do or to furnish, they filed, in the clerk's office, the statements necessary to mature their inchoate rights to a lien, as provided by section 2468, *supra,* and their liens relate back and take effect prior to the mortgage, in fact take effect at the time they commenced to furnish materials and to labor, and hence, their liens are necessarily superior to the lien of the mortgage, unless the mortgage was taken by appellee, in good faith, for value, and without notice of the appellant's right to a lien, and recorded according to law. The notice, which appellee must have had, to render its lien subordinate to appellants' lien, must have been an actual notice, as distinguished from the constructive

notice, which appellants might have made effective by
filing in the clerk's office prior to the recording of the
mortgage, the preliminary statements of their work or
materials furnished, or of their intentions to work or
furnish materials. Foushee v. Grigsby, 12 Bush 75;
Scheas v. Boston & Paris, 125 Ky. 536; Voss v. Home
Loan & Building Association, 167 Ky. 231; First National
Bank, etc. v. Chowning, etc., 142 Ky. 624; Trust Com-
pany, etc. v. Young, 131 Ky. 771. The above cases, also,
established the doctrine, that the knowledge by the mort-
gagee, that improvements are being made upon property,
but without knowledge of the nature of the contract be-
tween the owner and the materialman and laborers, and
without knowledge that the latter has a lien, as they
may be paid in cash, does not amount to the actual
notice, which is required to render the lien of the mort-
gagee inferior to that of the materialman and laborers.
In those cases, however, there was no such a contract be-
tween the mortgagee and mortgagor, as to the advance-
ments of the funds, and the purpose and the time when
they should be advanced, as exists in this case, nor did
there exist the same elements of knowledge on the part
of the mortgagee, as existed in the instant case.

The general rule is, that a mortgage given to secure
future advances, if in good faith, and properly recorded,
is valid, as between the parties to it and all subsequent
encumbrancers, although the mortgage does not, on its
face, express, that it is to secure future advances, nor
need the agreement to that effect, be in writing, although
it can not be enforced, except as to the sums advanced,
and after they are advanced, and in accordance with this
rule, it is held in many jurisdictions, that a mortgage,
executed and recorded to secure money for the express
purpose of making improvements or placing buildings
upon the property mortgaged, and when recorded before
any work is commenced or materials furnished, is a
superior lien to the liens of the materialmen and laborers,
and particularly so, if the mortgagee is bound to make
the advances, or the money is used in making the im-
provements, 43 L. R. A. 622; Bartley v. Norton & Bilger,
92 Iowa, 732; Rully v. Harlee, 35 Cal. 302; Ackeman v.
Hunsicker, 85 N. Y. 46; Googins v. Gilmore, 47 Me. 13;
Morris v. Cain, 30 La. Ann. 712; Kien v. Hodge, 90 Iowa,
212; Taylor v. LaBar, 25 N. J. Eq, 222; Wooten v.
Armath, 31 Gratt, 228; Dakota Bldg., etc., Association v.

Coburn, 150 Ind. 684, but, the statutes of most states gives to the materialmen and laborers, a superior lien to an encumbrance created, after the commencement of the labor or the furnishing of the materials, and it will be observed, that the above cited cases were all dealing with the dignity of a mortgage lien created before the work had commenced or the materials were furnished, for which the laborer and materialman's liens were asserted. The appellants' liens, in the instant case, dating from the beginning of their work and furnishing materials, were prior to the lien of the mortgage of appellee, and we are relegated to the express terms of our statute, to determine the rights of the parties.

Under the express terms of the statute the lien of appellee being created after the beginning of the work and the furnishing of materials, for which appellants' liens are asserted, their liens are necessarily superior to that of the mortgagee, unless the lien of appellee's mortgage was created, for value and without actual notice on the part of appellee of appellants' rights. To have actual notice of appellants' equity, the Bank & Trust Company must have known, that the appellants had furnished materials or done labor, for which they had not been paid, and for which they were entitled to assert the statutory lien. To require more knowledge than this, would defeat the purpose of the statute, touching the notice, as the appellee could not know whether the appellants would perfect their lien by filing a final statement as provided in section 2468, *supra*, until it was done, and the appellants could not file such statement until their work had been completed, under their contracts. Hence, the only question for determination is, whether, under the evidence, the Bank & Trust Company, when its lien was created, had actual knowledge, that work had been done or materials furnished and not paid for, and for which the appellants were entitled to assert liens. The proof shows, that up to the times, the advancements were made to Wright, of $300.00 on January 12, and $450.00 on January 15, and at the times the other and previous advancements were made, that the Bank & Trust Company did not have actual knowledge, according to the doctrine of Foushee v. Grigsby, *supra*, and Scheas v. Boston & Paris, *supra*, of the equities of the appellants, but, when those two advancements were made, they had actual knowledge,

received from Wright, that work had been done and materials furnished in the construction of the house, which had not been paid for.

It, also knew, that the mortgage had been executed, expressly, to obtain funds with which to erect the house, and from the promise to discharge it, by weekly installments, in a small amount, and extending over such a length of time, that Wright did not have means to construct the house, other than that, which the Bank & Trust Company advanced to him under the mortgage, and in the evidence, the Bank & Trust Co.'s agents admit, that they believed such to be the fact. It had already discharged the lien which the vendor held for the purchase money of the lot. The Bank & Trust Company, under the agreement with Wright, had assumed the duty of looking after the release of liens, and, under the contract, had the right to withhold the money, from Wright, until it should be assured, that it was used for paying for the labor and materials, so that the property would not be encumbered with liens for the prices of such things. The proof fails to show, that the Bank & Trust Company, knew the names of the materialmen and laborers, nor the amounts due them, when the two advancements were made, but, had abundant knowledge to put it upon inquiry, and where a party is put upon inquiry, the knowledge amounts to notice of the actual facts, if the inquiry is a duty, as in case of purchasers and creditors, and would lead to the requisite knowledge of the facts, if the party uses ordinary intelligence and understanding. 29 Cyc. 1114; Willis v. Vallett, 4 Met. 186; Russell v. Petree, 10 B. M. 184; Bennett v. Titherington, 6 Bush 196; Everidge v. Martin, 164 Ky. 497; Summer v. Taylor, 80 Ky. 429; Lain v. Morton, 23 K. L. R. 483.

The contention, of appellants that the Bank & Trust Company's mortgage does not attach to the house, because, it was not in existence, when the mortgage was executed, can not be sustained. Where a lien is created upon land, and buildings are thereafter erected upon it, the lien attaches to the buildings, as they are constructed, and has priority over the liens of materialmen and laborers for constructing the buildings. Cooley v. Black, 105 Ky. 267; Orr v. Batterton, 14 B. M. 81. In the absence of a statute to that effect, a prior lien can not be restricted to the land itself, when a building is there-

after erected upon it, nor can the liens of mechanics and materialmen for the erection of a house upon land, which is covered by a prior lien, be restricted to the building alone, as the statute provides the lien to be upon both the lands and the houses upon it. For the reasons above stated, the lien of the Bank & Trust Company, for the amount of the purchase money note, which it discharged upon both land and house, is superior to the liens of appellants, as the company is entitled to be subrogated to the lien of the vendor.

The mortgage to the Bank & Trust Company attached to the property, as the advancements under it were made, and as said heretofore, it could only be enforced to the extent of the advancements made as against the mortgagor. It did not become a mortgage "for value" until the money, it was intended to secure, was advanced, by the mortgagee, and whatever may be the rule, as to computing the date, as to which it would become valid, as to subsequent encumbrancers, the mortgagee under it would not be protected as to prior encumbrances, except to the extent it became a valid obligation for value and without notice to the mortgagee of opposing equities. It has been held many times, that one claiming to be a bona fide purchaser of land, for value and without notice of outstanding equities against the land, is only protected in his purchase to the extent, that he has made payment before notice, and if he has not completed payment before receiving notice of outstanding equities, he will be charged with the equities to the extent of the unpaid purchase money. Carter & Co. v. Richardson & Co., 22 K. L. R. 1204; Hardin v. Harrigton, 11 Bush 367; Lain v. Morton, 23 K. L. R. 438; Winclock v. Mundy, 156 Ky. 806.

There appears to be no good reason, why the same rule should not apply to a mortgagee under a mortgage, wherein the money for which the mortgage was given, was to be advanced in installments. Garry v. Cushing, 5 Bush 304; Foushee v. Grigsby, supra; Ky. Bldg. & Loan Assn. v. Kister, 101 Ky. 323. It does not seem equitable, that the mortgagee with notice of the equities of the materialmen and laborers against the property should be permitted to destroy the effectiveness of their liens, and thereby makes its own security sufficient at their expense.

The attachment upon $903.12 of the proposed loan was properly dismissed, and the appellant, Lumber & Mill Works Company, denied the right to subject it to its debt. The money had never been advanced to Wright and he, having failed to keep his contract with the Bank & Trust Company, in the payments to be made by him, his creditors, could not have any greater right in regard to it, than himself. Cassina v. Smiley, 10 K. L. R.

It is therefore ordered, that the judgment be reversed, and cause remanded with directions to set aside the judgment, so far as it adjudges, that the appellee's mortgage lien was superior to the lien of appellants, upon the house and lot to the extent of the $750.00 advanced to Wright, on the 12th and 15th days of January, and for further proceedings not inconsistent with this opinion.