## Ringo et al. v. McFarland, County Judge, et al.

(Decided January 31, 1930.)

BEN D. RINGO and LA VEGA CLEMENTS for appellants.

WILBUR K. MILLER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

Joseph Malcolm Smith, a World War veteran, had, prior to June 20, 1928, been employed by the county judge of Daviess county as a clerical assistant in the quarterly court and by the county road engineer as such an assistant in his office. Smith drew a salary of $125 a month for the work thus done. He also drew a pension of $60 a month from the government. He was married, and had bought a home on St. Ann street in Owensboro. Outwardly he lived a very abstemious life, but the truth was that he had embezzled a large sum of the county's money from the road fund, and had used it in the payment for and the improvement and furnishing of his home and in the purchase and stocking of a small farm near the city. His embezzlements were discovered, and on Wednesday, June 20, 1928, he was arrested. Among his intimate friends were the appellants, lawyers of standing and ability, not only in their community but in the whole state. Upon Smith's arrest, these attorneys were sent for. They went over to the county attorney's office where Smith was being detained. He was in such a state of mind that no discussion relative to his case or even to employment could then be had, and all the appellants did for him on that occasion was to arrange for his bond, which he gave. He then went to the home of some of his kinspeople in order to rest a bit and to get his bearings.

On Friday following his arrest, the fiscal court of Daviess county directed the county attorney to bring suit against him for the purpose of recovering the amount he had embezzled. The fiscal court also directed the county attorney to attach in this suit any property belonging to Smith that could be reached by such proceeding. Notice of the action of the fiscal court was published in the Owensboro papers of that day, and appellants admit having read the article that afternoon or evening. The county attorney prepared the suit that night but was unable to file it until Saturday, the 23d. That morning Smith and his kinspeople visited the appellants and there made arrangements with the appellants to represent him, in the criminal proceedings that had been or would be instituted against him. In order to pay the appellants for their services to be rendered, Smith gave them a note for $2,000, secured by a second mortgage on the St. Ann street property; the first mortgage in the sum of $4,500 being held by the Owensboro Banking Company. Mr. Clements, one of the appellants, took the mortgage over immediately to the county clerk's office to be recorded. On his way he stopped at the circuit clerk's office to see if the suit authorized by the fiscal court the day before had been filed, and, finding that it had not, he at once put his mortgage to record. That same day the county attorney filed this suit, in which he sought not only a recovery against Smith for the amount of his peculations estimated to be at least $10,000, but also the enforcement of an equitable lien against the St. Ann street property to the extent that the Smith's peculations had gone into the payment for and improvement of that property.

On June 30, 1928, as the result in part of the efforts of his counsel, Smith was allowed to plead guilty to one of the many indictments pending against him, and the other indictments were thereupon filed away. At that time he filed a statement in court admitting his guilt, and setting out with some detail how he had embezzled the funds and how he had used them. At the same time he executed a deed of trust to the master commissioner of the Daviess circuit court which authorized the commissioner to sell the property covered by it and out of the proceeds to discharge any valid liens against the same. The commissioner sold the St. Ann street property for $6,600, and, after discharging the bank's lien, which

everybody admitted to be valid, and paying the costs of the action, he had in his hands the sum of $1,963.75, which was less than the amount Smith had indicated in his statement he had used in paying for and improving the St. Ann street property. By an amended petition, the appellants were brought into this suit and required to set up whatever claim they had in the property, which was alleged to be inferior to that of the county. By their answer, counterclaim, and cross-petition, the appellants, on information and belief, denied that Smith had embezzled any money, that any part of his alleged embezzlements had gone into the payment for or improvement of the St. Ann street property, and that the county had an equitable lien for any amounts which might have gone into the payment for or improvement of this property. Appellants also sought the enforcement of their mortgage. A demurrer filed to the answer was passed for hearing when the merits of the case were heard. A reply was filed which in effect pleaded that the appellants took their mortgage with full knowledge of all the facts upon which the equitable lien of the county was based, and that they were not bona fide purchasers for value without notice. These allegations were put in issue. Proof was taken, and on the final submission the court sustained the demurrer to the answer of the appellants, dismissed their counterclaim and cross-petition, and awarded the county a superior lien on the amount yet in the hands of the master commissioner, which was thus exhausted by this judgment of the court.

The parties in their briefs on this appeal do not argue the validity of the court's action in sustaining the demurrer. Nor shall we, for, as the case was also heard on its merits, if on the merits the court's judgment was correct, it will have to be affirmed, even though the court was in error in sustaining the demurrer. Did the county have an equitable lien against the St. Ann street property? This in turn depends on whether the county established the fact of Smith's peculations and the fact of the use of these peculations by him in payment for and improvement of the St. Ann street property, and whether, if these facts be established, does the law by reason of them raise an equitable lien or not. The only testimony introduced in this case was produced by the county, and the only witnesses it introduced were the appellants themselves. In the course of their examina-

tion the county had these two gentlemen to file, as a part of their testimony, the statement which Smith had filed in court at the time he pleaded guilty to the indictments. The appellants filed this statement without protest or objection, and they did not thereafter move the court to strike it from the record. On the contrary, they submitted the case with this evidence before the court. Neither of the appellants denied the truth of the statements thus made by Smith. Although had the appellants objected, Smith's statement would not have been competent, since it was only hearsay, yet, as they allowed it to go into the record without protest or objection, the court had a right to consider it, and it established the facts upon which the county relies to raise its asserted equitable lien.

Some point is made by the appellants that the petition averred that Smith was assistant county road engineer, a position unknown to the law, but it does not make any difference in the county's case whether Smith was an assistant county engineer or only a clerk in the office of the county engineer, for the existence of the lien does not turn on the capacity in which Smith embezzled the money, but on whether or not he did steal the county's money and used it in the payment for and improvement of his property. The foundation of the equitable lien is the use by the owner of property or money belonging to another which he has unconscionably come into the possession of and has used in the payment for or improvement of his property. We are then confronted by the question, Does the law, by reason of the facts proved, raise an equitable lien on behalf of the county against the St. Ann street property?

It is the general rule, supported by authority in this state and elsewhere, that, if the funds of one person are wrongfully used by another in the purchase of real estate in his own name, a constructive trust in the property purchased arises in favor of the one whose money was wrongfully used, whether the relation between the parties at the time of the misuse of the funds was a fiduciary one or not. Stone v. Burge, 74 S. W. 250, 24 Ky. Law Rep. 2424. See, also, Vanderpool v. Vanderpool, 163 Ky. 742, 174 S. W. 727; Farmers' Bank of White Plains et al. v. Bailey et al., 221 Ky. 55, 297 S. W. 938. The authorities from sister states may be found collected in 43 A. L. R. 1418 et seq. In the instant case,

the county is not seeking to impress a constructive trust upon the property, but only an equitable lien. Unlike a constructive trust, an equitable lien is not an estate or property in the thing itself. It is neither a jus ad rem nor a jus in re. As said in the case of Jones, Trustee, v. Carpenter, 90 Fla. 407, 106 So. 127, 129, 43 A. L. R. 1409: "It is simply a right of a special nature over the thing, which constitutes a charge or incumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists. It is the very essence of this condition that while the lien continues the possession of the thing remains with the debtor or the person who holds the proprietary interest subject to the incumbrance. Pomeroy's Equity Jurisprudence (4th Ed.) vol. 3, p. 2958."

However, the considerations which raise a constructive trust in favor of one whose funds have been unconscionably used in the purchase of other property support the doctrine of an equitable lien in favor of one whose funds have been unconscionably used by another in the improvement of the latter's property. In good faith and good conscience, the property which has thus been improved by the wrongful use of the funds of one other than the owner of the property should stand in lien to reimburse the owner of the funds for the money wrongfully spent upon it. And such are the authorities. Thus in Humphreys v. Butler, 51 Ark. 351, 11 S. W. 479, an equitable lien was impressed upon land which had been purchased by the owner with funds which rightfully belonged to another. The same principle was applied in the case of E. C. Bowman & Son Co. v. Hern, 239 Mass. 200, 131 N. E. 334. In the case of Day v. Roth, 18 N. Y. 448, A. was intrusted with the funds of his fiancee for the purpose of investment. He used them in the purchase and improvement of real estate, title to which he put in his brother's name. In upholding an equitable lien upon this property in favor of the fiancee, the court said: "We must assume that the plaintiff expected her agent would honestly make the investment, and in a form which would preserve at least some trace of her own rights. This expectation was certainly none the less reasonable, when we consider that the agent was also her accepted

lover. In the mildest phrase, it was a gross abuse of the trust thus to deal with the money confidingly placed in his hands; and in the most lenient view of the conduct of the other brother, he stands in no relation to the controversy which enables him to profit by that abuse. According to the just and well established rule of equity, the plaintiff lost no rights by the transaction, and she may enforce her claim as an equitable lien in the nature of a resulting trust."

And in the case of Jones, Trustee, v. Carpenter, supra, it is said: "From the foregoing it is seen that equitable liens arise from two sources, viz.: (1) A written contract which shows an intention to charge some particular property with a debt or obligation; (2) is declared by a court of equity out of general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular case. Jones on Liens, supra (vol. 1 (3rd Ed.) 26); 17 R. C. L. 605, supra; 25 Cyc. 667. Equitable liens are necessarily based on the doctrine of estoppel and usually arise in cases of expenditures by one joint owner on real or other property or in cases where a party innocently and in good faith makes improvements on the property of another. These last two, however, are by no means the only instances in which they may arise."

In the instant case, funds belonging to Daviess county were wrongfully used by Smith in the improvement of the St. Ann street property and also used to complete its purchase price. In all fair dealing and good conscience, the land thus bought and improved should stand in lien to the extent of the money thus expended upon it, and equity will raise an equitable lien upon it to that extent.

We are next confronted with the question whether or not the appellants are within the rule of a bona fide purchaser for value without notice, for, if they are, then their mortgage lien will be superior to the equitable lien asserted by the county. We accept without question the statement of the appellants that they did not actually know at the time they took their mortgage that Smith had embezzled the funds of the county or that he had used any embezzled funds in the payment for or improvement of his property. They frankly admit that they knew the county was claiming that Smith had embezzled its funds, but they state that they did not know to what

extent he had embezzled such funds or that he had used them upon the St. Ann street property. We need not decide whether the facts which they admit knowing put upon them any further inquiry or not, because, under the facts as disclosed by this record, the appellants are not within the rule of bona fide purchasers, even though at the time they took their mortgage they were ignorant of the county's equitable lien. The proof in this case establishes that the note and mortgage were given for services *to be rendered*. They were executed and delivered on Saturday. The appellants admit that at least from the following Monday on, they knew the county was claiming an equitable lien and was insisting that this lien was superior to the mortgage lien of the appellants. The record fails to disclose that the appellants performed any substantial service to Smith until after they had discovered and knew of the claim of the county to an equitable lien upon the St. Ann street property.

In the case of Kentucky Lumber & Mill Work Co. et al. v. Kentucky Title Savings Bank & Trust Co., 184 Ky. 244, 211 S. W. 765, 769, 5 A. L. R. 391, the question was the superiority of a mortgage given to secure future advances over equities in existence and of which the mortgagee had notice at the time the advances were made. We said: "The mortgage to the Bank & Trust Company attached to the property as the advancements under it were made, and, as said heretofore, it could only be enforced to the extent of the advancements made as against the mortgagor. It did not become a mortgage 'for value' until the money it was intended to secure was advanced by the mortgagee, and, whatever may be the rule as to computing the date as to which it would become valid as to subsequent incumbrancers, the mortgagee under it would not be protected as to prior incumbrancers, except to the extent it became a valid obligation for value and without notice to the mortgagee of opposing equities. It has been held many times that one claiming to be a bona fide purchaser of land, for value and without notice of outstanding equities against the land, is only protected in his purchase to the extent that he has made payment before notice, and if he has not completed payment before receiving notice of outstanding equities, he will be charged with the equity to the extent of the unpaid purchase money. Carter & Co. v. Richardson & Co., 60 S. W. 397, 22 Ky. Law Rep. 1204; Hardin

630

v. Harrington, 11 Bush 367; Lain v. Morton, 63 S. W. 286, 23 Ky. Law Rep. 438; Winlock v. Munday, 156 Ky. 806, 162 S. W. 76. There appears to be no good reason why the same rule should not apply to a mortgagee under a mortgage, wherein the money for which the mortgage was given was to be advanced in installments. Gere v. Cushing, 5 Bush, 304; Foushee v. Grigsby, supra (12 Bush, 75); Ky. Bldg. & Loan Ass'n v. Kister, 101 Ky. 323, 41 S. W. 293 (19 Ky. Law Rep. 494). It does not seem equitable that the mortgagee with notice of the equities of the materialmen and laborers against the property should be permitted to destroy the effectiveness of their liens, and thereby make its own security sufficient at their expense.''

Applying the principle thus laid down to the facts of the instant case, we must hold the mortgage lien of the appellants inferior to the equitable lien of the county, for the services for which the note and mortgage were given were performed after the appellants had notice of the equitable lien claimed by the appellee, and hence to that extent were not within the rule protecting bona fide purchasers for value without notice.

It follows that the judgment of the lower court is correct, and it is affirmed.